**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RUTH A. HARRINGTON,  ) | |
| ) | CASE NO.     5:07-cv-983 |
| Plaintiff,  ) | |
| ) | |
| v.  ) | MAGISTRATE JUDGE VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE,  ) | |
| Commissioner of Social Security  ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant.  ) | |

Plaintiff Ruth A. Harrington ("Harrington") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Harrington's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court AFFIRMS the final decision of the Commissioner.

### I. Procedural History

On April 9, 2003, Harrington filed an application for POD and DIB alleging a disability onset date of February 28, 1998 and claiming that she was disabled due to a variety of physical and mental problems.  Her application was denied initially and upon reconsideration.  Harrington timely requested an administrative hearing.

On August 1, 2005, Administrative Law Judge Ronald C. Dickinson ("ALJ") held a hearing during which Harrington, represented by counsel, testified.  Ted S. Macy testified as the vocational expert ("VE").  On October 17, 2005, the ALJ found Harrington was able to perform her past relevant work and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.  Harrington filed an appeal to this Court.

On appeal, Harrington claims the ALJ erred by failing to call a medical expert to determine the onset of disability pursuant to SSR 83-20.

### II. Evidence

*Personal and Vocational Evidence*

Born on February 10, 1942 and age sixty-three (63) at the time of her administrative hearing, Harrington is a "person of advanced age."  *See* 20 C.F.R. § 404.1563(e).   Harrington has a college education and past relevant work as a medical lab technologist and phlebotomist.

*Medical Evidence*

On October 5, 1993, Hayes Davis, M.D., wrote a letter to Thomas Myers, D.O., and noted that Harrington, although she voiced no complaints, probably has significant peripheral vascular disease.  (Tr. 106.)  Dr. Davis voiced concerns about Harrington's renal function and

recommended an angiography.  *Id*.  Dr. Davis requested that the angiography be performed at the clinic of the Northeast Ohio Nephrology Associates so he can "monitor [Harrington's] kidney function closely as she would be at great risk for developing superimposed acute renal failure." *Id*.

On July 11, 1994, Harrington was hospitalized for approximately two weeks due to septicemia.  (Tr. 107-08.)

On December 13, 2000, Harrington underwent an echocardiogram, which revealed small pericardial effusion that was not hemodynamically significant.  (Tr. 115-18.)  The impression was mild mitral regurgitation, trivial tricuspid regurgitation, hypertrophy of the interventricular septum and anterior pericardial effusion.  (Tr. 116.)

On April 2, 2001, Harrington underwent another echocardiogram.  (Tr. 110-11.)  The results showed Grade II diastolic dysfunction of the left ventricle, probable normal left ventricular function without a segmental wall motion analysis and trivial mitral regurgitation. *Id*.

On April 5, 2002, an ultrasound venous duplex study of the right lower extremity was performed due to right leg swelling.  (Tr. 132.)  The ultrasound did not reveal any deep vein thrombosis.  *Id*.

On June 17, 2002, x-rays of Harrington's lumbar spine showed degenerative changes of the facet joints at L4-5 and L5-S1 with moderate bone proliferation on the right that is suggestive of a probable associated anomaly of the facet structures.  (Tr. 131.)

On December 16, 2002, Harrington underwent a brain CT scan after reporting memory loss.  (Tr. 101.)  The impression was no interval change in prominence of ventricles compared to

scan performed on December 15, 1999.  *Id*.  Test findings were indicative of central atrophy, although normal pressure hydrocephalus was another consideration.  *Id*.

On June 18, 2003, Dr. Myers reported the following to the Bureau of Disability in a teledictation concerning Harrington.  (Tr. 127-28.)  He was unaware of any obvious motor loss, muscle weakness, atrophy, or sensation changes; her limitation of motion in her lumbar spine was appropriate for her age and not severe.  (Tr. 127-28.)  Harrington's gait was slightly wide and unstable, but not unusual for her age or habitus; Dr. Myers was unaware of any use of an ambulatory aid.  (Tr. 128.)  X-rays of Harrington's lumbar spine by a prior physician in August 2000 showed extensive degenerative arthritis with spondylolisthesis at L5-S1.  *Id*.  Harrington had been treated for severe depression and Alzheimer's type dementia.  *Id*.  Her hypertension was well-controlled, she had osteoporosis, and her renal insufficiency appeared stable.  *Id*.  A peripheral Doppler study performed by Harrington's prior physician on October 2, 2000 revealed significant arterial occlusive disease bilaterally.  *Id*.  Dr. Myers opined that Harrington could not maintain a job due to her mental and physical limitations.  (Tr. 129.)

On September 10, 2003, Dr. Myers noted that Harrington had a five-year history of diabetes, a 15-year history of hypertension, a two-year history of dementia, and lumbosacral arthritis documented by x-rays from June 17, 2002.  (Tr. 125.)

On November 3, 2003, Mel M. Zwissler, Ph.D., completed a Psychiatric Review Technique form and indicated that there was insufficient evidence to evalaute Harrington's medical disposition.  (Tr. 135.)

*Hearing Testimony*

At the hearing, Harrington testified to the following.  She had arthritis in her back and

4

problems with peripheral vascular disease at the time last worked. (Tr. 375-76.) She would take "breaks" while working by writing up paperwork between patients and found it increasingly difficult to be on her feet. (Tr. 376.) She was unsure when her memory problems began. (Tr. 377.) She stated that she did not try to find another medical technician job after being terminated because she was disappointed and did not want to pursue that line of work anymore. (Tr. 377-78.) She believed she suffered from depression. (Tr. 378.) Also, she testified that she had back pain that limited her ability to perform household chores. *Id*.

Harrington's husband also testified at the hearing and stated the following. Around February of 1998, Harrington became increasingly forgetful and stopped performing household chores. (Tr. 380.) He was not surprised she was terminated from her job and noted that she had started to develop a short temper since the mid-1990s. (Tr. 381.) Around 2000, Harrington's treating physician informed her that the arteries of her brain were hardening, which caused a form of dementia. *Id*. He also testified that Harrington had been limited due to her back pain since the early-to-mid-1990s. (Tr. 382.)

The VE testified as follows. Harrington's past job as a phlebotomist was light and semiskilled, both as she performed it and as it is typically performed. (Tr. 383.) Harrington's past job as a medical technologist was medium and skilled, but her skills would transfer to other jobs in the light range. (Tr. 383-84.) He further testified that Harrington's past jobs were detail-oriented. (Tr. 385).

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason

5

of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while he or she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Harrington was insured on her alleged disability onset date, February 28, 1998, and remained insured only through June 30, 2000. (Tr. 23.) Therefore, in order to be entitled to POD and DIB, Harrington must establish a continuous twelve month period of disability commencing between February 28, 1998 and June 30, 2000. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Harrington established a medically determinable, severe impairment, due to an affective disorder, short-temper personality disorder, and peripheral vascular disease, but

---

[1] The entire five-step process entails the following: First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found Harrington is capable of performing her past relevant work as a phlebotomist and, therefore, is not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. Analysis

Harrington claims the ALJ erred by failing to call a medical expert to determine the onset of disability pursuant to SSR 83-20. Harrington avers that the ALJ should have considered medical evidence that post-dated June 30, 2000 – her last insured date. (Pl.'s Br. at 6-8.) The Commissioner contends that SSR 83-20 is inapplicable, because there was no finding that Harrington was disabled and, therefore, no need to inquire into Harrington's alleged onset date. (Def.'s Br. at 8.)

In a prior decision of the Sixth Circuit Court of Appeals, the Sixth Circuit was faced with

a similar argument where a claimant averred that the ALJ erred by failing to follow the mandates of SSR 83-20, which pertains to onset of disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).   Therein, the claimant argued that the onset date of his alleged mental impairment was a significant issue, but the Sixth Circuit found that SSR 83-20 was inapplicable because SSR 83-20 "applies only when there has been a finding of disability and it is necessary to determine when the disability began."  *Id*.  While Harrington acknowledges the holding of the Sixth Circuit in *Key*, she draws the Court's attention to other circuit courts that have held a medical expert is necessary to address an onset date where it is ambiguous.  *See Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006) (Tenth Circuit has held that "a medical advisor need be called only if the medical evidence of onset is ambiguous.") (citations omitted); *Katt v. Astrue*, 225 Fed. Appx. 455 (9th Cir. 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability."); *Jakubowski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 104, 107 (3rd Cir. 2007) ("SSR 83-20 dictates that an ALJ should call on the services of a medical advisor when he or she must infer the onset date of an impairment that is not clear from the applicant's medical records.")

This Court is bound by the decisions of the Sixth Circuit.  Furthermore, the cases cited by Harrington only require an ALJ to consult an ME when the onset date is ambiguous.  In the present case, there is no finding that Harrington was ever disabled and, therefore, there is no onset date.  In addition, Harrington's argument is based on a series of suppositions.  First, Harrington avers that the ALJ ignored an x-ray and a Doppler examination that post-dated her last insured date.  (Pl.'s Br. at 8.)  While these examinations are not mentioned in the ALJ's opinion, the ALJ stated that he reviewed "all of the evidence of record."  (Tr. 19.)  Harrington

has not cited any authority suggesting that an ALJ is required to explicitly discuss each and every test or examination contained in the medical record and the Court shall not impose such an unduly burdensome requirement. Second, Harrington assumes that the aforementioned records, had they been reviewed, would necessarily have resulted in a finding that she was disabled as of the date of the examinations. Finally, based on these assumptions, Harrington posits that, because she was allegedly disabled soon after her insured status expired, the actual onset date of her disability is ambiguous and, therefore, requires the ALJ to consult an ME. This Court, however, finds that Harrington's conclusions are neither compelled by the evidence nor the law.

Because the ALJ reviewed all of Harrington's records and did not find that she was disabled at any point, SSR 83-20 is inapplicable.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Nancy A. Vecchiarelli
U.S. Magistrate Judge

Date: February 27, 2008